# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 16, 2018                    Decided July 27, 2018

No. 15-7064

BRIEN O. HILL,
APPELLANT

v.

ASSOCIATES FOR RENEWAL IN EDUCATION, INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00823)

*Yongo Ding*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the brief was *Anthony F. Shelley*, appointed by the court.

*Brien O. Hill*, *pro se*, filed the briefs for appellant.

*Jiyoung Yoon* argued the cause and filed the briefs for appellee.

Before: ROGERS, KAVANAUGH[*] and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Concurring Opinion filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: This is an Americans with Disabilities Act ("ADA") employment case. Plaintiff Brien Hill is a single-leg amputee who taught in defendant Associates for Renewal in Education's ("ARE's") afterschool program. The District Court granted partial summary judgment for ARE on two of Hill's claims, which he now appeals. Three other claims went to trial, where Hill was awarded damages for ARE's failure to accommodate his disability by refusing his request to teach on a lower floor. The primary issues on appeal are whether ARE also failed to reasonably accommodate Hill's disability by refusing his request for a classroom aide, and whether ARE's failures to accommodate Hill's disability created a hostile work environment. Hill proceeded *pro se* in the District Court and was represented by appointed counsel for this appeal.

We affirm the District Court's conclusion that Hill has not proffered sufficient undisputed facts for his hostile-work-environment claim to survive summary judgment. We reverse as to Hill's remaining failure-to-accommodate claim, however, because Hill's allegations present a triable issue of fact as to whether ARE violated the ADA when it refused his request for a classroom aide.

---

[*] Judge Kavanaugh was a member of the panel at the time the case was argued but did not participate in this opinion.

**I.**

**A.**

The following facts are taken from the parties' submissions on ARE's motion for summary judgment and are undisputed unless otherwise indicated. ARE is a non-profit that provides care and educational programs to underserved children and adults in Washington, D.C. It is located in a three-story building with no elevator, requiring teachers to climb up and down the stairs "for fire and emergency evacuation drills, supervised outdoor play and scheduled student lavatory breaks located on the basement floor." Supplemental Brief for Plaintiff ("Pl. Supp.") 3, *Hill v. Assoc. for Renewal in Educ.*, No. 12-cv-823, ECF No. 41. Hill, who wears a leg prosthesis, was employed by ARE in various capacities until his employment was terminated in December 2008. As an ARE teacher and program aide, Hill's duties included "instructing participants in the classroom, on field trips or outside activities; prepar[ing] and administer[ing] overall classroom management; counsel[ing] participants on academic and behavioral challenges, as well as, provid[ing] administrative and/or clerical support to the administrative personnel." Affidavit of La'Troy Bailey ("Bailey Aff.") ¶ 5, ECF No. 32-1. Prior to 2007, Hill requested and was granted several accommodations for his disability, including a request for assignment to a lower-level classroom.

In May 2007, Hill fell while walking across the ARE playground, "severely injur[ing his] amputated stump and damag[ing his] prosthesis." Declaration of Brien Hill ¶ 5, ECF No. 33. Upon returning to work, he requested a classroom aide for himself and his pregnant co-teacher. Hill also requested that he be able to continue holding class on the second floor of the building. These requests were granted until August 27,

2007, when Hill was reassigned to a classroom by himself on the third floor and without a classroom aide. Hill alleged that he "expressed [his] concerns" about this reassignment verbally on August 31, 2007; that he made a written request to be "repositioned back to the lower level" and have "the accommodation of having an Aide assigned to [his] classroom;" and that he followed up with "daily verbal request[s]" for these two accommodations throughout the school year. Declaration of Brien Hill ("Hill Decl.") ¶¶ 8-10, ECF No. 10. These accommodations were not provided. Hill was the only teacher in his program who was not assigned a classroom aide, and Hill taught more students than any of his colleagues.

Around the same period of time, Hill began to have disciplinary issues at work. On September 1, 2007, Hill's duties were changed to a part-time position due to a reduction in force and due to his "excessive tardiness and inconsistent call-ins." Bailey Aff. ¶ 4. His supervisor eventually recommended Hill's termination, and on that same day, Hill submitted a letter to ARE's Deputy Director of Education requesting review of the denial of his requests for a classroom aide and for assignment to a lower floor, among other issues. Hill was terminated effective December 15, 2008.

**B.**

Hill filed a *pro se* complaint against ARE asserting, among other things, a hostile work environment and several ADA claims, including failure to accommodate for denying his requests for a classroom aide and for denying his request to teach on a lower floor. Compl. ¶¶ 43-78, ECF No. 1. ARE moved for summary judgment on most of the ADA claims, arguing that Hill did not actually make the accommodation requests. ARE did not argue that the accommodations of a

lower floor or a classroom aide were unreasonable or unnecessary for Hill to perform the essential functions of his job, nor did ARE argue that Hill was unqualified for his position by being physically unable to perform the essential functions of his job with or without accommodation.

After receiving the parties' filings, the District Court issued an order *sua sponte* stating that "[t]he record contains no evidence (or argument) on the third element of plaintiff's reasonable accommodation claim," *i.e.*, "whether or not plaintiff could perform [his job's essential] functions with or without reasonable accommodation." Order, ECF No. 40, at 1. The order directed the parties "to supplement the record" and "advised [Hill] that he should (1) clearly describe the essential functions of the part-time job he held in September 2007 when he allegedly began requesting the accommodations at issue and (2) explain why he needed 'the accommodation of an Aide' and a relocation to a lower level room to perform the essential functions of the job.'" *Id.* at 2. Hill responded with a fifteen-page supplemental submission explaining that "his physical disability substantially limited his ability to walk for long distances, stand for long periods of time (as required given that he supervised his classroom alone), . . . [and] supervise[] outdoor play and scheduled student lavatory breaks on the basement floor . . . without the hazard of pain and bruises." Pl. Supp. 3. Hill's supplemental submission also stated that "he worked alone and suffered a gradual decline in strength and energy due to injury and fatigue from August '07 - December '08," *id.* at 4, and that he "performed all the DBA Program Aide job(s) . . . alone, from August '07 - December '08, and experienced grave hardships in doing so," *id.* at 12.

In response, ARE argued that Hill admitted he was able to perform the essential functions of his job without accommodation, "but not without pain." Supplemental Brief

for Defendant ("Def. Supp.") at 3, ECF No. 42. ARE's supplemental submission did not argue that Hill was unqualified for his position or that the requested accommodations would cause ARE undue hardship. ARE, which was counseled, argued only that Hill did not make the accommodation requests and that he did not need the accommodations of a lower floor or classroom aide because he could perform the essential functions of his position, just with "pain."

The District Court granted summary judgment for ARE on Hill's claims for hostile work environment and failure to accommodate by refusing to assign him a classroom aide, and denied summary judgment on Hill's claim for failure to accommodate by refusing to assign him to a lower floor. *Hill v. Assoc. for Renewal in Educ.*, 69 F. Supp. 3d 260, 267-68 (D.D.C. 2014). Regarding the claim for denial of a classroom aide, the District Court concluded Hill "ha[d] not adduced any evidence to show that an Aide would have been an effective means of addressing the limitations imposed by his amputated leg," and granted summary judgment because "when an employee seeks a workplace accommodation, the accommodation must be related to the limitation that rendered the person disabled." *Id.* at 268 (quoting *Adams v. Rice*, 531 F.3d 936, 944 (D.C. Cir. 2008)).

Three of Hill's ADA claims proceeded to trial. The jury found for Hill on his failure-to-accommodate claim for ARE's refusal to assign him to a classroom on a lower floor, awarding him compensatory and punitive damages. ARE and Hill both moved to set aside the verdict, and the District Court denied both motions. Hill now appeals the District Court's grant of summary judgment for ARE on his claims for hostile work environment and failure to accommodate by denying the request for a classroom aide.

**II.**

This Court reviews a grant of summary judgment *de novo*, viewing the "evidence in the light most favorable to the nonmoving party" and drawing all reasonable inferences in his or her favor. *Minter v. District of Columbia*, 809 F.3d 66, 68 (D.C. Cir. 2015) (quoting *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002)). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We follow the general principle that "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**A.**

ARE did not raise whether a hostile-work-environment claim is available under the ADA, a question that this Court has not yet decided and that we do not reach here. *Cf. Lanman v. Johnson Cty.*, 393 F.3d 1151, 155-56 (10th Cir. 2004) (joining three other circuits in holding that the ADA's incorporation of language from Title VII shows Congress's intent to allow hostile-work-environment claims to proceed under the ADA). Even assuming that the ADA allows recovery for a hostile work environment, we affirm the entry of summary judgment for ARE on this claim. To prevail on a hostile-work-environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d

8

1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The work environment must be both objectively and subjectively hostile, meaning that a "reasonable person would find [it] hostile or abusive," and that the victim must "subjectively perceive the environment to be abusive." *Harris*, 510 U.S. at 21-22.  The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

We affirm the dismissal of Hill's hostile-work-environment claim because he has not shown that "his employer subjected him to 'discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201.  While a jury could find that assigning Hill to the third floor and denying him a classroom aide failed to reasonably accommodate his disability, these are not the kind of "extreme" conditions that this Court and the Supreme Court have found to constitute a hostile work environment.  *See Faragher*, 524 U.S. at 788; *cf. Singletary v. District of Columbia*, 351 F.3d 519, 528 (D.C. Cir. 2003) (concluding that a reasonable factfinder could find a hostile work environment when the plaintiff was assigned to a storage room containing brooms and boxes of debris that lacked heat, ventilation, proper lighting, and a working phone, and to which plaintiff lacked keys so he was at risk of getting locked in).  The District Court therefore correctly concluded that a reasonable jury could not return a verdict for Hill on his hostile-work-environment claim.

**B.**

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of

disability . . . [in the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A). The ADA defines "reasonable accommodation" to include, among other things, "making existing facilities used by employees readily accessible to and usable by individuals with disabilities," and "the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." *Id.* § 12111(9)(A), (B).

To prevail on a failure-to-accommodate claim, a plaintiff must show by a preponderance of the evidence (1) that he or she has a disability under the ADA; (2) that the employer had notice of the disability; (3) that the plaintiff could perform the essential functions of the position either with reasonable accommodation or without it; and (4) that the employer refused to make the accommodation. *See Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014). The requested accommodation "must be related to the limitation that rendered the person disabled." *Adams*, 531 F.3d at 944 (quoting *Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 848 (8th Cir. 2005)). A plaintiff "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases. Once the plaintiff has made this showing, the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *U.S. Airways v. Barnett*, 535 U.S. 391, 401-02 (2002) (citations omitted).

We conclude Hill sufficiently alleged a connection between his disability and the assistance a classroom aide could provide while Hill supervised his students to present a triable issue of fact as to whether ARE's denial of an aide violated the

ADA. The ADA's purpose in requiring reasonable accommodations is reducing barriers to employment for persons with disabilities. Therefore, to be "reasonable" under the ADA, an accommodation must be related to the disability that creates the employment barrier and must address that barrier; the ADA does not make employers responsible for alleviating any and all challenges presented by an employee's disability. *See Nuzum*, 432 F.3d at 848 ("[T]here must be a causal connection between the major life activity that is limited and the accommodation sought."); *Felix v. New York City Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) ("Adverse effects of disabilities and adverse or side effects from the medical treatment of disabilities arise 'because of the disability.' However, other impairments not caused by the disability need not be accommodated."); EEOC's Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App. (2016) ("[A]n employer [does not] have to provide as an accommodation any amenity or convenience that is not job-related" and "that is not provided to employees without disabilities."). Hill satisfied these requirements by alleging that he experienced a hazard of pain and bruising on his stump while standing for long periods of time, and by specifically connecting that hazard to supervising his class without assistance. Construing Hill's *pro se* submissions liberally and with all reasonable inferences drawn in his favor, a reasonable jury could find that if ARE provided Hill a classroom aide as it did for his colleagues, that aide could help Hill supervise students in the classroom and during outdoor activities, reducing his need for prolonged standing and mitigating the alleged "hazard of pain and bruising." Pl. Supp. 3.

ARE argues, for the first time on appeal, that a classroom aide would not be a reasonable accommodation. (Recall that ARE argued below that Hill did not request these

accommodations, a losing argument on summary judgment because Hill introduced documentary and testimonial evidence of the request). According to ARE, Hill feared only "falling while walking" or his prosthesis breaking while he was working, and provided "no evidence as to how an aide would alleviate this fear" once Hill was assigned to a lower floor. ARE Br. in Response to Amicus 10-11. ARE now asserts that "[i]t is unlikely an Aide could prevent a fall." *Id.* 11. ARE also emphasizes that an aide could not help with "problems arising from staircase climbing," and that in any event Hill "assured [his supervisor] that his disability did not affect him while he worked on the lower level of the facility and did not prevent him from performing essential job duties there." *Id.* 12. ARE uses some language from the complaint to suggest that Hill conceded that he did not need an aide if he was moved to a lower floor, ignoring that the complaint also alleged that Hill supplied ARE "with medical records attesting to his ability to perform the essential functions of his job with reasonable accommodation of his disability *(an aide assigned to his classroom)*." Compl. ¶ 32 (emphasis added).

ARE also fails to view the evidence in the light most favorable to Hill, as we must at this stage. *Keefe Co. v. Americable Int'l, Inc.*, 169 F.3d 34, 38 (D.C. Cir. 1999). Hill's evidence tended to show not only that he was at risk from falling while walking long distances or climbing stairs, but also that he would suffer "pain and bruises" from prolonged standing while supervising his classroom alone. Hill's submission in response to the District Court's order also stated that "he worked alone and suffered a gradual decline in strength and energy due to injury and fatigue from August '07 - December '08," Pl. Supp. 4, and that he "performed all the DBA Program Aide job(s) . . . alone, from August '07 - December '08, and experienced grave hardships in doing so," *id.* at 12. Hill's documentary evidence showed that he

requested an aide "to keep with [my] daily schedule, which requires both indoor and outdoor gross motor activities," Mem. from Brien Hill to Nykia Washington, ECF No. 22, at 22, thereby connecting the accommodation request to job functions that are made difficult and painful by his disability. Construing this evidence in the light most favorable to Hill, a reasonable jury could find that Hill's disability put him at risk of pain and bruises when standing for long periods of time, that he would have to stand for long periods of time while supervising his classroom or outdoor play without an aide to assist him, and that he did in fact suffer harm "due to injury and fatigue" during the time he was denied the accommodation of a classroom aide. *See Anderson*, 477 U.S. at 248. A reasonable jury could also conclude that Hill suffered from prolonged standing on his stump regardless of the floor on which he taught; therefore, contrary to ARE's assertions, moving Hill to a lower floor would not necessarily have resolved his classroom-aide request.

ARE's assertion that Hill did not need the accommodation of a classroom aide because he could perform the essential functions of his job without accommodation, "but not without pain," Def. Supp. at 3, is unavailing. A reasonable jury could conclude that forcing Hill to work with pain when that pain could be alleviated by his requested accommodation violates the ADA. *See Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1099 (D.C. Cir. 1997) ("We assume without deciding that if working conditions inflict pain or hardship on a disabled employee, the employer fails to modify the conditions upon the employee's demand, and the employee simply bears the conditions, this could amount to a denial of reasonable accommodation, despite there being no job loss, pay loss, transfer, demotion, denial of advancement, or other adverse personnel action."); *Gleed v. AT&T Mobility Servs., LLC*, 613 F. App'x 535, 538-39 (6th Cir. 2015) (rejecting an employer's

argument that providing a chair to an employee who experienced pain from prolonged standing was not a reasonable accommodation because "the ADA's implementing regulations require employers to provide reasonable accommodations not only to enable an employee to perform his job, but also to allow the employee to 'enjoy equal benefits and privileges of employment as are enjoyed by . . . similarly situated employees without disabilities." (quoting 29 C.F.R. § 1630.2(*o*)(1)(iii))).

To be clear, we do not decide that the classroom aide should have been provided as a reasonable accommodation for Hill's disability; rather, we conclude only that on this record, a reasonable jury could have concluded as much. We also note that this is not a case where Hill's request for an aide can be dismissed, as a matter of law, as a request to have someone else perform one or more essential job functions for him. *See, e.g.*, *Dark v. Curry Cty.*, 451 F.3d 1078, 1089 (9th Cir. 2006) ("The ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees."); LARSON, EMPLOYMENT DISCRIMINATION § 154.04[1] (2d ed. 2007) ("[A]n employer is not required to provide an 'assistant' to help an employee with a disability to perform his or her job" if that assistant is simply "reassign[ed] essential functions of a job."). This is because an employer may be required to accommodate an employee's disability by "reallocating or redistributing nonessential, marginal job functions," or by providing an aide to *enable* the employee to perform an essential function without replacing the employee in performing that function. 29 C.F.R. Pt. 1630, App.; *see also* 42 U.S.C. § 12111(9)(B) (A reasonable accommodation may include "job restructuring," the "provision of qualified readers or interpreters," and "other similar accommodations for individuals with disabilities."); *see also Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d

Cir. 1995).  Viewing the evidence regarding Hill's request for a classroom aide in the light most favorable to Hill, *Minter*, 809 F.3d at 68, we understand his request to be for assistance with class supervision so that he would not have to "stand for long periods of time (as required given that he supervised his classroom alone)," Pl. Supp. 3, not a request that an aide conduct all class supervision in Hill's stead, particularly since every teacher but Hill had a classroom aide and ARE had given Hill such an aide in the past.

* * *

We affirm the District Court's dismissal of Hill's hostile-work-environment claim, and we reverse, vacate, and remand the partial grant of summary judgment on the claim that Hill was denied the reasonable accommodation of a classroom aide for further proceedings consistent with this opinion.

*So ordered.*

1

WILKINS, *Circuit Judge*, concurring: I write separately to note my view that, although we find that the District Court erred when it granted partial summary judgment on the claim that Hill was denied the reasonable accommodation of a classroom aide, it is not absolutely clear that the proper remedy is to remand for trial.

As stated above, Hill's complaint alleged a single cause of action for failure to accommodate, asserting that ARE failed to accommodate his request to be placed on a lower floor *and* that ARE failed to accommodate his request for a teacher's aide. While the District Court granted summary judgment as to the teacher aide theory, it nonetheless gave Hill wide latitude during the trial to present evidence and argument to the jury about the failure to provide an aide. Hill, proceeding *pro se*, complained in both opening statement and closing argument about being placed on the third floor "with no assistance." Transcript of Plaintiff Opening Trial Statement at 3, *Hill v. Associates for Renewal in Educ.*, No. 12-cv-823 (D.D.C. 2015), ECF No. 95; Transcript of Jury Trial at 669, ECF No. 104. Hill also introduced testimony about the duties that aides provide, *id.* at 95-96, ECF No. 101, and suggesting that every teacher had an aide other than him during the 2007-2008 school year, *id.* at 288, 293, 318-19, 367-68, ECF No. 102; *id.* at 553, 556, ECF No. 103. When Hill testified about the pain and injury he allegedly suffered, he stated numerous times that it was due to "work[ing] unassisted on the third floor," *id.* at 589-90, so he repeatedly told the jury that the failure to provide him an aide contributed to his pain and suffering, *id.* at 562, 626-27.

In sum, although ARE was granted summary judgment with regard to the failure to provide an aide, the District Court was quite solicitous of Hill in allowing him to present evidence and argument at trial regarding his classroom-aide claim.

Under these circumstances, it seems quite plausible that in finding for Hill on the reasonable accommodation claim, the jury took into account any pain and injury Hill suffered due to the failure to provide him with an aide.  Indeed, the jury was not instructed that the only accommodation request that it could consider was the failure to move Hill to a lower floor; rather, the jury was told simply to recompense Hill if it found in his favor on the failure to accommodate claim, without specifying which particular accommodation to consider.  *Id.* at 719, 723-24, ECF No. 104.  Further, the jury was instructed that it could award compensatory damages for "*any* physical pain or emotional distress . . . that the plaintiff has suffered in the past. . . [or] may suffer in the future," *id.* at 731 (emphasis added).  Similarly, the jury was instructed that "[i]f you find for the plaintiff, then you must award the plaintiff a sum of money which will fairly and reasonably compensate him for *all* the damage which he experienced that was proximately caused by the defendant."  *Id.* at 730 (emphasis added).

It is well settled that a party "cannot recover the same damages twice, even though the recovery is based on two different theories."  *Medina v. District of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011) (citation omitted).  Thus, even if the District Court erred in granting partial summary judgment, Hill is not entitled to a windfall of double damages from a second trial if the jury already compensated him for ARE's failure to provide him an aide in the damages award from the first trial.  "[H]e should be made whole for his injuries, not enriched."  *Id.*; *see also Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1306 (10th Cir. 2003); *Tompkins v. Cyr*, 202 F.3d 770, 785 (5th Cir. 2000); *Bender v. City of New York*, 78 F.3d 787, 794 (2d Cir. 1996).  It is appropriate to leave it to the District Court to determine, in the first instance, the proper manner to proceed upon remand, including whether the remaining failure to accommodate theory should be dismissed because Hill "has already obtained

all the relief available to [him]." *Ridgell-Boltz v. Colvin*, 565 F. App'x 680, 684 (10th Cir. 2014).